# EXHIBIT "A"

KY M. PAPKE (USB 14281)
TERRELL LEE (USB 11702)
**ALTA LEGAL, LLC**
470 N. University Ave., Ste 202
Provo, UT 84601
T: 385.224.3765
F: 385.225.9478
Email: trlee@alta-legal.com
Attorney(s) for Plaintiff

---

**IN THE THIRD JUDICIAL DISTRICT,**

**COUNTY OF SALT LAKE, STATE OF UTAH**

| | |
|---|---|
| COREY GRITTON, an individual,<br><br>　　　　　　　　Plaintiff<br><br>　　　　　　vs.<br><br>FANUC AMERICA CORPORATION, a corporation, SANI-MATIC, INC., a corporation, and JOHN / JANE DOES 1-10<br><br>　　　　　　Defendants. | **COMPLAINT**<br>**(Jury Demand)**<br>**(Tier III)**<br><br><br>Case No.:<br><br>Judge: |

Plaintiff, by and through counsel, hereby complain against Defendants and, for causes of action, alleges the following:

**PARTIES, JURISDICTION & VENUE**

1.　　　COREY GRITTON (hereinafter "Plaintiff") is a resident of Tooele County, state of Utah.

2.      Upon information and belief, FANUC AMERICA CORPORATION (hereinafter "FANUC") is a Delaware Corporation doing business in Salt Lake County, State of Utah..

3.      Upon information and belief, Defendant FANUC is an active Corporation registered in the State of Utah.

4.      Upon information and belief, SANI-MATIC, INC. (hereinafter "SANI-MATIC") is a Wisconsin Corporation doing business in Salt Lake County, Utah, and/or has otherwise served a market for its products in Salt Lake City, Utah with systematic and regular connections and business operations in and for the state of Utah.

5.      Upon information and belief, the actions of SANI-MATIC giving rise to Plaintiff's claims in this matter, occurred while SANI-MATIC was actively registered in the State of Utah or while SANI-MATIC maintained systematic and regular business operations in and for the state of Utah.

6.      Defendant JANE DOE 1 is, upon information and belief, a resident of the State of Utah.

7.      Defendant JOHN/JANE DOES 2-10 are unknown or unidentified persons or entities.

8.      The events giving rise to this Complaint, including the location where Plaintiff was injured, occurred in Salt Lake County, state of Utah.

9.       This Court has jurisdiction over this action pursuant to Utah Code § 78A-5-102.

10.     Venue is proper in this Court pursuant to Utah Code § 78B-3-307.

## GENERAL ALLEGATIONS

11.     This matter arises out of personal bodily injuries that Plaintiff sustained while working on October 30th, 2017 on the Production Floor at TOSCA SERVICES, LLC at 5950 W. Amelia Earhart Dr., in Salt Lake City, State of Utah.

12.     Specifically, Plaintiff was struck and seriously injured by a large robotic arm (hereinafter the "Robot") which should have been disengaged at the time it struck him.

13.     Plaintiff was employed by TOSCA SERVICES, LLC as a Supervisor for the cleaning and packing of reusable plastic containers / totes.

14.     As part of Plaintiff's regular job duties, he was regularly required to enter the Robot Cell Area, where the Robot was located, and to occasionally inspect the Robot's sensors, which could temporarily cause the robot to stop functioning.

15.     The regular function of the Robot at TOSCA SERVICES, LLC was to pick up totes from stackers at the end of conveyer belts designated as "stacker 1" and "stacker 2", and place stacks of these totes onto pallets for shipment.

16.     The Robot was equipped with multiple safety devices and functions, designed to prevent the Robot from operating when a human being was in the immediate vicinity of the Robot.

17.     The Robot was surrounded by a metal fence, with a gate used for entry into the interior of the perimeter of the fence.   The interior portion of the fence was called the Robot Cell (hereinafter "Robot Cell").

18.     The gate was equipped with an emergency stop mechanism, such that the door is opened, or even jarred, the robot is shut off and can only be re-engaged by manually restarting the Robot on a separate touch-screen interface in a separate location of the building.  This touchscreen interface was referred to as the HMI touch screen, and could only be re-booted using a password.

19.     The gate was also equipped with 3 keys, which allowed up to three individuals to disable the robot (by turning and removing a key) and enter the interior perimeter of the fence.

20.      The robot was ostensibly designed to cease all movement and functions once a key was turned and removed – and could only re-commence its functions once all three keys were re-inserted and turned to the on position.

21.     Accordingly, the robot was ostensibly designed to ensure that a person entering the interior perimeter of the fence could not be accidentally harmed by the robot;

       a.   If such individual turned and removed a key or keys, the Robot was ostensibly designed to return to its vertical position and cease all further movement until such person returned to the outside perimeter of the fence and re-inserted the key(s).

       b.   Alternatively, if such individual failed to turn and remove a key before opening the gate, the emergency stop mechanism would ensure that the robot ceased all further movement until it was rebooted from outside the perimeter of the fence using the HMI touchscreen interface.

22.     On the morning of October 30, 2017, Plaintiff became aware that the Robot was only taking totes from Stacker 2, but not from Stacker 1.

23.     This indicated to Plaintiff that something may have been blocking a sensor related to Stacker 1 and required Plaintiff to enter the interior perimeter of the fence and inspect the sensors.

24.     It was not uncommon for Plaintiff and other employees to enter the interior perimeter of the fence for various reasons, including to inspect whether sensors were loose, blocked, wet, dusty, or otherwise obstructed.

25.     On an average workday, Plaintiff entered the interior perimeter of the fence approximately 40 times.

26.     When Plaintiff approached the perimeter of the fence on October 30, 2017, the Robot was stopped, but was not in the vertical upright position.

27.     Before entering the gate, Plaintiff turned and removed a key in accordance with standard operating and safety procedures.

28.     When Plaintiff turned and removed the key, the Robot returned to its vertical upright position, as it was supposed to do.  This indicated to Plaintiff that the Robot had been turned off.

29.     Plaintiff took the key with him through the gate, hanging around his left wrist by a plastic expandable ring, in accordance with standard operating and safety procedures.

30.     Plaintiff proceeded to inspect the sensors near stacker 1, bending at his waist, and continued to do so for approximately 30 seconds.

31.     While Plaintiff was bending over to inspect one of the sensors near stacker 1, facing away from the Robot, Plaintiff was struck by the Robot on his lower back, causing him to fall slightly forward and downward toward the ground.

32.     As Plaintiff fell, the Robot continued to move downward, striking Petitioner's left leg and pinning/crushing it to the ground from above his knee to his ankle/foot.

33.     Plaintiff suffered serious injuries to his back/spine, left leg, left knee, left ankle, and left heel / foot which have disabled him, caused him to incur significant medical expenses, resulted in multiple surgeries, and have cause him significant pain and suffering, emotional distress, lost wages, and other damages, to be proven at trial.

34.     Plaintiff was still holding the key around his wrist at the time of his injury, and continued to hold it until he was placed on a stretcher by the Paramedics, at which time he gave the key to the Service Center Manager, Rod Lowe.

35.     Because Plaintiff turned and removed the key, and opened the gate, the Robot should never have moved or struck Plaintiff.

36.     Upon information and belief, the Robot was designed and manufactured by SANI-MATIC sometime between 2006 and 2011 and installed by SANI-MATIC at TOSCA SERVICES, LLC in Salt Lake City, Utah.

37.     Upon information and belief, alterations of the original physical design/specifications of the Robot and/or to the software operating the Robot were made to the robot by SANI-MATIC, by FANUC, and/or by John Doe Defendants or Jane Doe Defendants, on location in Salt Lake City, Utah at time or times between its installation and October 30, 2017.

38. Upon information and belief, following the Robot's installation, Defendant SANI-MATIC spent approximately two years on location at TOSCA SERVICES, LLC performing integration, engineering, servicing, and rebuilding the Robot for its intended use at TOSCA SERVICES, LLC.

39. Upon information and belief, SANI-MATIC left the Robot in a condition which it knew or should have known were defective and likely to result in physical harm to employees of TOSCA SERVICES, LLC.

40. In the alternative, the Robot or the software operating the Robot was altered by Defendants in such a way as to impair or disable the safety mechanisms designed to prevent the Robot from operating when a worker was in the immediate vicinity of the robot.

41. Upon information and belief, Defendants SANI-MATIC, FANUC, and John / Jane Doe Defendants 1-10, performed extensive repairs, software modification, integration, engineering, servicing, redesign, and/or rebuilding of the Robot after its installation.

42. Upon information and belief, Defendants knew or should have known prior to October 30, 2017 that a defect in the original or modified design, manufacture, software, or safety systems of the Robot existed which created conditions which posed unreasonable safety hazards to workers at TOSCA SERVICES, LLC.

43. Upon information and belief, Defendants failed to notify TOSCA SERVICES, LLC or its workers of the safety hazards associated with the continued operation and use of the Robot.

44.     Upon information and belief, Sometime prior to October 23, 2017, management of TOSCA SERVICES contacted defendant FANUC to diagnose and repair issues the Robot was experiencing prior to that time.

45.     Upon information and belief, an employee of FANUC, identified hereafter as "Jane Doe 1" performed significant repairs and modifications to the Robot, including the systems and software of the Robot, from October 23, 2017 through October 26, 2017.

46.     At the conclusions of the repairs performed by FANUC through its employee Jane Doe 1, Jane Doe 1 approached a member of management and indicated that the repairs had been made and the Robot was in working order.

47.     During this conversation, Jane Doe 1 stated that she guaranteed / warrantied her work and said, referring to the Robot, "it is going to work."

48.     The Robot was not used or operated between October 23, 2017 and the morning of October 30, 2017, except by Jane Doe 1 for the purposes of making repairs to the Robot on behalf of FANUC.

49.     On October 30, 2017, the Robot began operating just after 6:00 a.m.

50.     Upon information and belief, Plaintiff was the first person to enter the Robot Cell after Jane Doe 1 and/or after the Robot began operating again on the morning of October 30, 2017.

51.     Upon information and belief, the safety functions of the Robot were working prior to FANUC's/Jane Doe 1's repairs between October 23, 2017 and October 26, 2017.

52.     Upon information and belief, the repairs and modifications performed by FANUC / Jane Doe 1 caused some of the Robot's safety components to malfunction and enabled the Robot

to function despite the fact that Plaintiff turned and removed one of the keys from the gate and opened the gate prior to his entrance into the Robot Cell.

53.    Upon information and belief, FANUC / Jane Doe 1 knew or should have known that the modifications / repairs were not in working and safe order and/or negligently failed to run appropriate and necessary tests to confirm that the safety mechanisms of the Robot were in proper working order.

54.    At the time of the accident, the Robot and its operating software and safety components failed to meet numerous Occupational Safety and Health Administration ("OSHA") and Utah Occupational Safety and Health Administration ("UOSH") standards, laws, and regulations including those regulations pertaining to risk assessment.   All defendants were responsible for these failures.

55.    Moreover, the Robot and its operating software and safety components failed to meet numerous American National Standard ("ANSI"), American Welding Society ("AWS") and Robotic Industries Association ("RIA") standards relating to robots, robot equipment, welding, electrical systems, machinery, risk assessment, as well as other areas to be determined through the use of discovery in this action.  All defendants were responsible for these failures.

56.    As a direct and proximate result of Defendants' negligent acts and omissions, Plaintiff suffered serious injuries to his body.

57.    As a direct and proximate result of Defendant's negligence, Plaintiff has sustained, and will continue to sustain, economic damages including, without limitation, reasonable and

necessary past and future medical expenses, past and future loss wages, loss of use of personal property, and other economic damages as the evidence may show at trial.

58.     As a direct and proximate result of the injury, Plaintiff has sustained, and will continue to sustain, non-economic damages including, without limitation, pain and suffering, emotional distress and mental anguish, and other non-economic damages as recoverable by law.

### **FIRST CAUSE OF ACTION**
**(Negligence – FANUC and JANE DOE 1)**

59.     Plaintiff incorporates all preceding paragraphs herein and further alleges the following:

60.     Defendants FANUC and JANE DOE 1 performed the installation, integration, engineering, and/or ongoing servicing of the Robot's components and software, including the safety, keyed shutoff, and emergency shutoff systems and devices, as well as the system's control logic used within the operating systems of the Robot.

61.     Defendants FANUC and JANE DOE 1 had exclusive control over the Robot between October 23, 2017 and October 26, 2017, and were the last parties who made changes to the software components, control logic, and operating systems of the Robot.

62.     Upon information and belief, the safety mechanisms and components, including the keyed shutoff and emergency shutoff systems and devices were working properly prior to October 23, 2017.

63.     In the alternative, FANUC and JANE DOE 1 were aware that the safety mechanisms and components, including the keyed shutoff and emergency shutoff systems and devices were not working properly prior to October 23, 2017 and should have taken reasonable

measures to ensure that such systems were in safe and working order prior to notifying management at TOSCA SERVICES, LLC that the Robot was fixed and would work.

64.     Defendants FANUC and JANE DOE 1 each owed a duty to Plaintiff to exercise ordinary care in the provision of services with respect to the robotic and safety devices of the Robot, including but not limited to the control, installation, integration, engineering, modification, and/or servicing of the Robot and its operational systems, software, and control logic.

65.     Defendants FANUC and JANE DOE 1 breached their duties of care to Plaintiff and acted negligently by controlling, installing, integrating, engineering, modifying, and/or servicing the Robot, such that its operating logic did not prevent it from moving when a gate key was turned and removed, as well as when the gate was opened.

66.     Defendants FANUC and JANE DOE 1 breached their duties of care to Plaintiff and acted negligently by failing to run appropriate tests and diagnostics to ensure the safety systems and emergency stop mechanism were functioning properly.

67.     Defendants FANUC and JANE DOE 1 breached their duties to Plaintiff and acted negligently by failing to properly make known or warn of defects which they knew or should have known existed that made conditions related to the operation of the Robot unsafe for workers at TOSCA SERVICES, LLC.

68.     Defendants' breaches of their duties of care to Plaintiff and negligent actions created an unreasonable risk of danger such that employees at TOSCA SERVICES, LLC, including Plaintiff, would be at risk of suffering severe injuries and/or death.

69.     As a direct and proximate result of Defendants breaches of their duties of care and negligent conduct, Plaintiff sustained physical injuries to his person, and economic and non-economic damages to be proven at trial.

**SECOND CAUSE OF ACTION**
**(Negligence – SANI-MATIC)**

70.     Plaintiff incorporates all preceding paragraphs herein and further alleges the following:

71.     Defendant SANI-MATIC performed the installation, integration, engineering, and/or ongoing servicing of the Robot's components and software, including the safety, keyed shutoff, and emergency shutoff systems and devices, as well as the system's control logic used within the operating systems of the Robot.

72.     After the Robot was purchased and installed, SANI-MATIC spent approximately 2 years making changes to the software components, control logic, and operating systems of the Robot.

73.     Upon information and belief, SANI-MATIC came to know, or had reason to know, that the components and software, including the safety, keyed shutoff, and emergency shutoff systems and devices, as well as the system's control logic used within the operating systems of the Robot, were defective or were not in proper working order.

74.     Upon information and belief, Defendant SANI-MATIC observed, and had control over, the operations of the Robot, including the safety mechanisms and control logic, for a period of two years.

75.     Defendant SANI-MATIC owed a duty to Plaintiff to exercise ordinary care in the provision of services with respect to the robotic and safety devices of the Robot, including but not limited to the control, installation, integration, engineering, modification, and/or servicing of the Robot, as well as the Robot's operational systems, software, and control logic and to warn TOSCA SERVICES, LLC and its employees of any unsafe or unresolved conditions.

76.     Defendants breached their duties of care to Plaintiff and acted negligently by controlling, installing, integrating, engineering, modifying, and/or servicing the Robot, such that its operating logic did not prevent it from moving when a gate key was turned and removed, as well as when the gate was opened.

77.     Defendants breached their duties of care to Plaintiff and acted negligently by failing to run appropriate tests and diagnostics to ensure the safety systems and emergency stop mechanism were functioning properly.

78.     Defendants breached their duties to Plaintiff and acted negligently by failing to properly make known or warn of defects which they knew or should have known existed that made conditions related to the operation of the Robot unsafe for workers at TOSCA SERVICES, LLC.

79.     Defendants' breaches of their duties of care to Plaintiff and negligent actions created an unreasonable risk of danger such that employees at TOSCA SERVICES, LLC, including Plaintiff, would be at risk of suffering severe injuries and/or death.

80.     As a direct and proximate result of Defendants breaches of their duties of care and negligent conduct, Plaintiff sustained physical injuries to his person, and economic and non-economic damages to be proven at trial.

### THIRD CAUSE OF ACTION
**(Negligence – JOHN/JANE DOES 2-10)**

81.    Plaintiff incorporates all preceding paragraphs herein and further alleges the following:

82.    Defendants JOHN/JANE DOES 2-10 are unknown persons or entities which are believed to have performed or assisted in the design, manufacture, installation, integration, engineering, and/or ongoing servicing of the Robot's components and software, including the safety, keyed shutoff, and emergency shutoff systems and devices, as well as the system's control logic used within the operating systems of the Robot, and/or persons or entities who otherwise had access or control to the Robot Cell, including the gate key systems or emergency shutoff sensors.

83.    Defendants JOHN/JANE DOES 2-10 each owed a duty to Plaintiff to exercise ordinary care in the provision of services with respect to the robotic and safety devices of the Robot, including but not limited to the control, installation, integration, engineering, modification, and/or servicing of the Robot, as well as the Robot's operational systems, software, and control logic or other components found in the Robot Cell.

84.    Defendants breached their duties of care to Plaintiff and acted negligently by controlling, installing, integrating, engineering, modifying, and/or servicing the Robot or the Robot Cell, such that its operating logic or safety systems did not prevent it from moving when a gate key was turned and removed, as well as when the gate was opened.

85.    Defendants breached their duties of care to Plaintiff and acted negligently by failing to run appropriate tests and diagnostics to ensure the safety systems and emergency stop mechanism were functioning properly.

86.     Defendants breached their duties to Plaintiff and acted negligently by failing to properly make known or warn of defects which they knew or should have known existed that made conditions related to the operation of the Robot unsafe for workers at TOSCA SERVICES, LLC.

87.     Defendants' breaches of their duties of care to Plaintiff and negligent actions created an unreasonable risk of danger such that employees at TOSCA SERVICES, LLC, including Plaintiff, would be at risk of suffering severe injuries and/or death.

88.     As a direct and proximate result of Defendants breaches of their duties of care and negligent conduct, Plaintiff sustained physical injuries to his person, and economic and non-economic damages to be proven at trial.

### FOURTH CAUSE OF ACTION
**(Res Ipsa Loquitur – All Defendants)**

89.     Plaintiff incorporates all preceding paragraphs herein and further alleges the following:

90.     The subject incident as described in the preceding paragraphs was an event of a kind which ordinarily does not occur in the absence of negligence.

91.     During the relevant time prior to Plaintiff's injuries, the Robot operating logic was within the exclusive control of Defendants.

92.     The hazard of the Robot moving and striking him inside the cell, having turned and removed the key and opened the gate, was not created by any voluntary action or contribution on the part of Plaintiff.

93.     Evidence of the true explanation of the incident described above is more readily accessible to the Defendants than to the Plaintiff.

## FIFTH CAUSE OF ACTION
### (Negligent Design – All Defendants)

94.     Plaintiff incorporates all preceding paragraphs herein and further alleges the following:

95.     At all times, Defendants owed a duty to Plaintiff and other Workers at Tosca Services, LLC to properly design, manufacture, program, and test their products, including the Robot and the Robot systems, robot tooling, controllers, part fixtures, welding process equipment and/or safety devices involved in this case.

96.     Upon information and belief, all defendants in this case were at separate times involved in the design of the Robot or its components or safety systems or software, giving rise to duties owed to Plaintiff.

97.     Upon information and belief, the aforementioned products at issue in this case were not reasonably safe.

98.     Upon information and belief, the aforementioned products at issue were manufactured defectively and/or negligently with defects.

99.     Upon information and belief, technically feasible alternative design and production practice was available at the time the aforementioned products at issue left the control of Defendants that could have prevented the harm without significantly impairing the usefulness or desirability of the Robot and its systems to users and without creating equal or greater risk of harm to others.

100.    Upon information and belief, the acts or omissions of defendants were a direct and proximate cause of Plaintiff's injuries.

## SIXTH CAUSE OF ACTION
### (Manufacturing Defect – All Defendants)

101.    Plaintiff incorporates all preceding paragraphs herein and further alleges the following:

102.    At all times, Defendants owed a duty to Plaintiff and other Workers at Tosca Services, LLC to properly design, manufacture, program, and test their products, including the Robot and the Robot systems, robot tooling, controllers, part fixtures, welding process equipment and/or safety devices involved in this case.

103.    Upon information and belief, Defendants SANI-MATIC, FANUC, AND JOHN/JANE DOES 2-10 were each at separate times involved in the manufacture of the Robot or its components or safety systems or software, giving rise to duties owed to Plaintiff.

104.    Upon information and belief, the aforementioned products at issue in this case were not reasonably safe.

105.    Specifically, the robot, robot controllers, and /or safety devices or components were manufactured by defendants defectively and/or negligently with defects including, but not limited to:

> a.   The aforementioned products or components deviated from their intended condition;
>
> b.   Defendants failed to manufacture their products / components so as to eliminate any unreasonable risk of foreseeable injury;

c.   The aforementioned products / components were not reasonably fit for their intended, anticipated or reasonably foreseeable use;

d.   Defendants failed to do what a reasonable manufacturer would have done in the production of the product, including an appropriate risk assessment;

106.   At the time the aforementioned products at issue in this case left the control of defendants, technically feasible alternative manufacturing practices were available that could have prevented the harm to Plaintiff without significantly impairing the usefulness or desirability of the Robot and its systems to users and without creating equal or greater risk of harm to others.

107.   Upon information and belief, the acts or omissions of defendants were a direct and proximate cause of Plaintiff's injuries.

## <u>SEVENTH CAUSE OF ACTION</u>
**(Breach of Implied Warranty – All Defendants)**

108.   Plaintiff incorporates all preceding paragraphs herein and further alleges the following:

109.   The products, including the robots, robot controllers, robot components, part fixtures, welding process equipment and/or safety devices involved in this case were not reasonably fit for their use or purpose anticipated or reasonably foreseen by Defendants when such products or components left their control.

110.   The acts or omissions of defendants as described herein were a direct and proximate cause of Plaintiff's injuries.

## FIFTH CAUSE OF ACTION
### (Failure to Warn – All Defendants)

111.    Plaintiff incorporates all preceding paragraphs herein and further alleges the following:

112.    At all relevant times, Defendants owed a duty to Plaintiff and to other employees at TOSCA SERVICES, LLC to properly design, manufacture and test their products, and to properly warn all potential users of the dangers associated with the intended use and foreseeable misuses of their products.

113.    Defendants breached their duties to adequately warn their potential users, including Plaintiff.

114.    The acts or omissions of Defendants were a direct and proximate cause of Plaintiff's injuries.

## PRAYER

WHEREFORE, Plaintiff prays for a judgment against Defendants in an amount to be determined by the tier of fact for the following damages, which will qualify for Tier III under Rule 26(c)(3) of the Utah Rules of Civil Procedure:

a.    For economic damages in an amount to be alleged and proven at trial;

b.    For non-economic damages in an amount to be alleged and proven at trial; and

c.    For any other further legal and/or equitable relief deemed just and proper by the Court including, without limitation, attorney fees, costs, pre- and post-judgment interest, and any other damages recoverable by law.

## **TIER DESIGNATION**

Pursuant to Utah Rules of Civil Procedure 8(a) and 26(c)(3), this matter falls under Tier

Three and should be permitted discovery pursuant to Tier Three.

## **JURY DEMAND**

Plaintiff demands a jury trial of all issues of fact in this matter.

DATED this 29th day of October, 2021.

**Alta Legal, LLC**

 /s/ Terrell R. Lee.
Terrell R. Lee
Attorney for Plaintiff

KY M. PAPKE (USB 14281)
TERRELL LEE (USB 11702)
**ALTA LEGAL, LLC**
470 N. University Ave., Ste 202
Provo, UT 84601
T: 385.224.3765
F: 385.225.9478
Email: trlee@alta-legal.com
Attorney for Plaintiff

---

### IN THE THIRD JUDICIAL DISTRICT, COUNTY OF SALT LAKE, STATE OF UTAH

| | |
|---|---|
| COREY GRITTON, an individual, | **SUMMONS** |
| Plaintiff | |
| vs. | |
| FANUC AMERICA CORPORATION, a corporation, SANI-MATIC, INC. a corporation, and JOHN / JANE DOES 1-10, | Case No.: 210905875 |
| | Judge: Linda Jones |
| Defendants. | |

THE STATE OF UTAH TO DEFENDANT:

FANUC AMERICA CORPORATION
c/o CORPORATION SERVICE COMPANY
15 West South Temple, Suite 600
Salt Lake City, UT 84101

You are hereby summoned and required to file an Answer in writing to the Complaint in the

above-entitled case within twenty-one (21) days after service of the Complaint and this

Summons if received by you within the State of Utah and within thirty (30) days if received

while you are outside of the State of Utah. You must file your written Answer with the Clerk of

the Court at the following address: Matheson Courthouse, 450 S. State Street, PO Box 1860, Salt

Page 1 of 2

Lake City, UT 84114-1860. You must also mail or deliver a copy of your Answer to Alta Legal, LLC, Plaintiff's attorney, at address 470 N. University Avenue, Suite 202, Provo, UT 84601, within twenty-one (21) days after service of the Complaint and Summons upon you if received in the State of Utah and within thirty (30) days if received outside of the State of Utah.

**IF YOU FAIL TO DO SO, JUDGMENT BY DEFAULT WILL BE TAKEN AGAINST YOU FOR THE RELIEF DEMANDED IN SAID COMPLAINT THAT IS ON FILE WITH THE CLERK OF SAID COURT, A COPY OF WHICH IS HERETO ANNEXED AND HEREWITH SERVED UPON YOU.**

      DATED AND SIGNED this 21st day of January, 2022.


/s/ Terrell R. Lee
Terrell R. Lee
Attorney for Plaintiff